IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DUKE E. CANNON,

        Plaintiff,                      No. CIV S-03-1769 LKK PAN P

    vs.

DAN CHARTIER, et al.,            ORDER AND

        Defendants.              FINDINGS AND RECOMMENDATIONS

_____/

        Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that, after filing grievances against one of the defendants, he was threatened and harassed, and made to fear for his safety in violation of his First Amendment rights. Specifically, plaintiff claims that defendants Chartier, Evans, Sherer, Neggers, Graves, Miles, and Wehunt violated his First Amendment rights by retaliating against him with threats, harassment, and wanton infliction of psychological and emotional distress for filing administrative petitions, and that defendants Chartier, Evans, and Sherer violated his First Amendment rights by frustrating his appeal with the production of fraudulent documentation. This matter is before the court on defendants' motion for summary judgment pursuant to Fed. R. Civ. P. 56.

/////

SUMMARY JUDGMENT STANDARDS UNDER RULE 56

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

> Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party

must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

/////

On September 17, 2003, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc), cert. denied, 527 U.S. 1035 (1999), and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

ANALYSIS

I. Facts[1]

At all times relevant to this action, plaintiff was a state prisoner in the custody of the California Department of Corrections and Rehabilitation (CDCR) at the California Conservation Center (CCC) in Susanville, California, and assigned to work at the Trinity River Conservation Camp. (Defendants' Statement of Undisputed Facts (DUF), filed December 16, 2005, ¶¶ 1, 10.) Defendants Graves, Miles, and Wehunt were correctional officers, defendants Sherer and Neggers were correctional sergeants, and defendant Evans was a correctional lieutenant employed by the CDCR at Trinity River Conservation Camp. (DUF ¶¶ 2-4.) Defendant Chartier was a fire captain employed by the California Department of Forestry and Fire Prevention (CDF), at Trinity River Conservation Camp, and in that capacity, he was in charge of a fire crew consisting of seventeen CDCR inmates, including plaintiff. (DUF ¶¶ 5, 6.)

On August 7, 2001, plaintiff approached defendant Chartier and requested new work gloves, as his were torn. (DUF ¶ 10.) Defendant Chartier perceived the manner in which plaintiff made his request as demanding and so told plaintiff to approach again and ask for new gloves in a less demanding manner. (DUF ¶¶ 10, 11.)

On August 7 or 8, 2001, plaintiff submitted a grievance against defendant Chartier regarding defendant Chartier's refusal to replace plaintiff's torn work gloves. (Plaintiff's Opposition to Defendants' Summary Judgment Motion, DUF ¶ 13.) Later that evening, plaintiff asked defendant Chartier if he was a racist and stated he was taking notes on defendant Chartier's

---

[1] Except as otherwise noted, these facts are not in dispute.

performance and work practices. (DUF ¶ 14.) Defendant Chartier replied that he was not a racist, was concerned about the safety of all inmates and staff, and was troubled by plaintiff's question and expressed intent to take notes on Chartier's performance and work practices. (DUF ¶ 14-15.)

After plaintiff filed this appeal, defendant Chartier displayed a high level of concern and safety for the crew, but especially for plaintiff. (Plaintiff's Declaration in Opposition to Defendants' Motion for Summary Judgment ¶ 3.) On August 8, 2001, defendant Chartier responded to plaintiff's appeal and, on or about August 18, 2001, plaintiff withdrew it. (Plaintiff's Decl. ¶ 4, DUF ¶ 16.)

On or around August 21, 2001, plaintiff complained of a toothache, requiring him to be transported back to the facility at Susanville for dental treatment. (DUF ¶ 17.) While plaintiff was away, CDCR staff removed him from defendant Chartier's work crew. (DUF ¶ 18; Plaintiff's Exhibit 4, CDC 128-B Chrono, dated August 21, 2001). The following week, once plaintiff had returned, CDCR staff asked defendant Chartier whether he wanted plaintiff reassigned to his crew, and defendant Chartier expressed his preference that plaintiff not return. (DUF ¶¶ 20, 21.)

Plaintiff had no disciplinary reports on his record at this time, and his three supervisory reports from defendant Chartier listed his teamwork and participation as being satisfactory in June, above average in July, and exceptional in August. (Plaintiff's Statement of Undisputed / Disputed Facts ¶ 3, Plaintiff's Exhibit 2, Work Supervisor's Reports for June, July, and August 2001.) The August review, covering the period in which the dispute over the work gloves took place, contained notations by defendant Chartier that plaintiff should be retained on the crew, but also that plaintiff's attitude toward supervisors and staff was below average. (Plaintiff's Exhibit 2.)

On September 6, 2001, plaintiff approached defendant Chartier while he was eating breakfast at the staff table in the camp kitchen, and presented him with a CDC 602

grievance, in which plaintiff complained about not being returned to Chartier's crew. (DUF ¶ 34; Defendant's Exhibit 3, CDC 602 Appeal, Log No. 01-1704.) Defendant Miles, who as kitchen officer was charged with the duty of overseeing kitchen operations, told plaintiff that it was not appropriate for plaintiff to give defendant Chartier the CDC 602 grievance at breakfast. (DUF ¶ 35.)

That same day, after the crews had been dispatched, defendant Wehunt saw plaintiff was still at the camp. (DUF ¶ 38.) At this time, defendant Wehunt was responsible to make sure that, once the fire crews had been dispatched, no crew inmates were left on the camp premises. (DUF ¶ 37.) Defendant Wehunt yelled out to plaintiff and asked what he was still doing at the camp. (DUF ¶ 39.) Plaintiff responded that defendant Miles had ordered him to work at that location, and defendant Miles confirmed that. (DUF ¶¶ 41, 42.)

Later that same day, defendant Sherer called plaintiff into his office and explained that it was inappropriate to present a grievance to staff during breakfast. (DUF ¶ 44.)

On the next morning, September 7, 2001, while working in the office at the Trinity River Conservation Camp, defendant Graves received a call from a female who identified herself as plaintiff's sister in law, and stated that she was "concerned about plaintiff's well-being." (DUF ¶¶ 48-50.) Defendant Graves responded that plaintiff was fine and gave her the name of plaintiff's counselor and the telephone number for the California Correctional Center (CCC). (DUF ¶ 51.) Later that morning, defendant Graves received another call from a female who identified herself as plaintiff's sister-in-law, and who also stated that she was "concerned about his well-being." (DUF ¶ 52.) Defendant Graves gave the second caller the same information that he gave the first caller, and explained that plaintiff was fine, and that he would have plaintiff call his family. (DUF ¶ 53.)

After receiving these calls, defendant Graves learned from defendant Neggers, who also worked in the office, that defendant Neggers also had received calls from people expressing concern for plaintiff's well-being. (DUF ¶ 55.) Defendant Graves called plaintiff

into the office and, in the presence of defendants Neggers and Wehunt, told plaintiff that several calls had been made by his family about his well-being, and requested plaintiff to call his family and tell them that he was fine.  (DUF ¶ 56.)

Plaintiff responded that he had called his family the night before because he was concerned for his safety after defendant Sherer threatened him.  (DUF ¶ 57.)  Plaintiff refused to ask his family to stop calling and stated that they could call the camp any time they wanted.  (DUF ¶ 58.)  Defendant Graves again asked plaintiff to have his family stop calling because there was no further information that he could give them, and again plaintiff refused, so defendant Graves ordered him to leave the office.  (DUF ¶ 59.)

On September 7, 2001, plaintiff was transferred to another camp.  (DUF ¶ 63, Defendant's Exhibit 2, CDC 128-B, dated September 7, 2001.)

On January 9, 2002, defendant Evans denied plaintiff's grievance at the second level of review, stating in part, that "[o]n 8/28/2001 upon your return to Trinity River Camp you were placed on the CDC in-camp crew due to your uncooperative and disruptive attitude towards your work supervisor prior to your return to the California Correctional Center for your dental appointment."  (DUF ¶ 64, Defendant's Exhibit 3, CDC 602 Appeal, Log No. 01-1704, Second Level Response.)

II. Plaintiff's Claims

Plaintiff claims that defendants violated his First Amendment right by retaliating against him for filing grievances. Defendant seeks summary judgment on the ground that the conduct of all the defendants in relation to plaintiff served a legitimate penological objective and hence did not violate his First Amendment rights.  In the alternative, defendants contend that they are entitled to qualified immunity from liability.

A. Retaliation

Plaintiff claims that he lost his work assignment in retaliation for filing a grievance against defendant Chartier when he refused to replace plaintiff's torn work gloves.

> "Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, [footnote 5 omitted] and (5) the action did not reasonably advance a legitimate correctional goal."

Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005). An allegation of "harm that is more than minimal" from the alleged retaliation can satisfy the fourth element without an allegation of a chilling effect. See Rhodes at 567, 568, n 11.

To establish a First Amendment retaliation claim, a plaintiff must show that the type of activity he was engaged in was constitutionally protected, that the protected conduct was a substantial or motivating factor for the alleged retaliatory action and that the retaliatory action advanced no legitimate penological interest. See Hines v. Gomez, 108 F.3d 265, 267 (9th Cir.1997). A plaintiff need only demonstrate that he suffered more than a de minimis inconvenience. American Civil Liberties Union of Maryland v. Wicomico County, 999 F.2d 780, 786 n. 6 (4th Cir.1993), accord Hines, 108 F.3d at 269 (chilling effect on First Amendment rights sufficient). Once such a showing is made, the burden shifts to the prison official defendants to show, by a preponderance of the evidence, that the retaliatory action was narrowly tailored to serve a legitimate penological purpose. Schroeder v. McDonald, 55 F.3d 454, 461-62 (9th Cir.1995).

The right to petition the government for a redress of grievances is a right protected by the First Amendment. The right has been broadly construed to include "a person's right to seek redress from all branches of government." Franco v. Kelly, 854 F.2d 584, 585-86 (2d Cir. 1988). Prison inmates are entitled to access to both administrative and judicial forums to seek redress of grievances against state officials. Hines v. Gomez, 853 F.Supp. 329, 331 (N.D.Cal. 1994) (quoting Franco at 585-86).

Plaintiff claims that defendants retaliated against him for filing an inmate appeal. He has therefore met the first prong of a retaliation claim. Plaintiff must also show that his

1 protected conduct (filing of an inmate appeal and grievance) was a substantial or motivating factor behind the alleged retaliatory conduct (removal from work assignment).  See Mt. Healthy City Bd. Of Educ. V. Doyle, 429 U.S. 274, 285-87 (1977).

Retaliation claims brought by prisoners must be evaluated in light of concerns over "excessive judicial involvement in day-to-day prison management, which 'often squander[s] judicial resources with little offsetting benefit to anyone." Pratt, 65 F.3d at 807 (quoting Sandin v. Conner, 115 S.Ct. 2293, 2299 (1995)).

### 1. Defendant Chartier

Plaintiff contends that his First Amendment right was violated when defendant Chartier retaliated against plaintiff for filing a grievance against him.  Plaintiff alleges that defendant Chartier retaliated by expressing a preference that plaintiff not be reassigned to his work crew following plaintiff's return from an off-site dental appointment.  The undisputed evidence of record shows that defendant Chartier refused to replace plaintiff's torn work gloves because he felt plaintiff was being demanding and disrespectful in the manner in which plaintiff approached him and asked for them.  Plaintiff then filed a grievance.  Later, plaintiff left the work crew for a dental appointment.  While plaintiff was away, CDC staff asked defendant Chartier whether he wanted plaintiff reassigned to his work crew.  Though plaintiff's work performance at this time was rated excellent, defendant Chartier expressed his preference that plaintiff not be reassigned to his work crew.  When plaintiff returned to work after attending to some dental care offsite, plaintiff was not permitted to return to his work assignment under defendant Chartier.  Plaintiff has submitted evidence that, when he spoke to defendant Chartier regarding the reason he no longer wanted plaintiff on his crew, defendant Chartier said, "I'm tired of the bullshit."  When plaintiff asked, "what bullshit?" defendant Chartier referred to plaintiff's appeal and expressed how he felt he had to carry himself differently around plaintiff and treat plaintiff differently due to the seriousness of the appeal.

/////

On the current record, there is a genuine issue of material fact as to whether the change in plaintiff's work assignments was retaliatory and not motivated by a legitimate correctional purpose. Defendants have a legitimate penological interest in changing a work assignment for safety purposes, as firefighting is inherently dangerous work and teamwork is essential. It is not clear, however, that was the motivation for keeping plaintiff from returning to his work assignment. In his Work Supervisor's Report, defendant Chartier gave plaintiff the highest possible rating in teamwork and participation. Though that was the area defendant Chartier claimed was most essential, he did not allow plaintiff to return to his work crew. Defendant Chartier also rated plaintiff as excellent in demonstrated skill and knowledge, use of tools and equipment, and quality of work. It was not until after plaintiff had submitted the CDC 602 grievance against defendant Chartier that defendant Chartier gave plaintiff his first below-average rating, which was in attitude to supervisor and staff.

This evidence works together to create the inference that plaintiff was not permitted to return to his work assignment for retaliatory purposes rather than due to legitimate penological concerns. Further, defendant Chartier admitted that he distrusted plaintiff because, defendant claims, after filing his grievance plaintiff asked defendant Chartier whether he was a racist and stated that he was going to be taking notes on defendant's work performance and practices. This also gives rise to the inference that defendant Chartier's preference not to have plaintiff return to his work crew was based partly on his desire to chill plaintiff's First Amendment right to take notes and file further grievances.

For the foregoing reasons, this court finds that plaintiff has submitted evidence that creates a triable issue of material fact as to whether defendant Chartier took adverse action against him following his filing of a grievance, causing him to lose his work assignment. Accordingly, defendant Chartier's motion for summary judgment should be denied.

/////

/////

### 2. Defendant Miles

Plaintiff contends that defendant Miles violated his First Amendment right by yelling at plaintiff for presenting defendant Chartier with a grievance. The undisputed facts show that defendant Miles told plaintiff that it was inappropriate for him to give defendant Chartier a CDC 602 grievance at breakfast due to security concerns, and that he should bring the grievance to the office before or after meal times. (Miles Declaration, at ¶ 14.)

Plaintiff offers no evidence to support the contention that defendant Miles acted with a retaliatory intent and not out of a legitimate penological concern for the security of the dining hall. For this reason, defendant Miles is entitled to summary judgment.

### 3. Defendant Wehunt

Plaintiff contends that defendant Wehunt violated his First Amendment right by yelling at him and threatening him with disciplinary action. The undisputed evidence shows that defendant Wehunt was responsible to make sure that no work-crew inmates were left on the premises once the crews had been dispatched, and in that capacity he yelled to plaintiff to determine his reasons for being present at the camp site. The undisputed evidence also shows that defendant Wehunt conferred with defendant Miles to determine that plaintiff was assigned to remain at camp rather than go out with the work crews, and that was the end of the matter.

Plaintiff offers no evidence to support the contention that defendant Wehunt acted in retaliation for plaintiff's filing of a grievance against defendant Chartier and not out of legitimate penological concerns. Therefore, plaintiff has not presented evidence sufficient to create a triable issue of material fact as to whether defendant Wehunt violated his First Amendment rights. For the foregoing reasons, defendant Wehunt is entitled to summary judgment.

### 4. Defendant Sherer

Plaintiff claims that defendant Sherer violated his First Amendment rights when he called plaintiff into his office and threatened plaintiff as a result of plaintiff's having presented

his grievance to defendant Chartier at breakfast. (Sherer Declaration, at ¶ 6.) The undisputed evidence shows that defendant Sherer was asked to speak to plaintiff regarding plaintiff's giving his grievance to defendant Chartier at breakfast, and that he called plaintiff into his office for this purpose and threatened him with various consequences such as the filing of a disciplinary violation for insubordination.

Plaintiff adduces evidence in his declaration that defendant Sherer insisted that plaintiff was giving staff a problem and threatened to file disciplinary violations against plaintiff if he did not "stay out of the officer's and captain's faces," and that this caused plaintiff to fear for his safety because he did not know how far the defendant would go. This evidence, though in dispute, creates on inference that defendant Sherer threatened plaintiff in retaliation rather than out of a legitimate penological concern regarding the manner in which the grievance was delivered. This court finds that plaintiff's evidence is sufficient to create a triable issue of material fact as to whether defendant Sherer violated plaintiff's First Amendment right. Defendant Sherer is therefore not entitled to summary judgment.

5. <u>Defendants Graves and Neggers</u>

Plaintiff claims that defendants Graves and Neggers violated his First Amendment rights by telling plaintiff to ask his family to stop calling the camp office to inquire into his well being. The undisputed facts show that several callers identifying themselves as plaintiff's family members called the office at the camp to inquire as to plaintiff's well-being, and as a result of the volume of calls, defendant Graves called plaintiff into the office, told plaintiff that several calls had been made by his family about his well-being, and asked him to call his family to tell them that he was fine.

Plaintiff presents no evidence that defendants Graves and Neggers were acting in retaliation for his filing of a grievance against defendant Chartier and not with the legitimate penological purpose of managing the incoming calls to the camp. (Graves Declaration, at ¶ 17.) This court finds that plaintiff's evidence is insufficient to create a triable issue of material fact as

1  to whether defendants Graves or Neggers acted in retaliation for plaintiff's exercise of his First
2  Amendment right.  Defendants Graves and Neggers are therefore entitled to summary judgment.

      6.  <u>Defendant Evans</u>

Plaintiff claims that defendant Evans violated his First Amendment right by relying on fraudulent evidence in denying plaintiff's grievance at the second level of review.  The undisputed facts show that on January 9, 2002, defendant Evans denied plaintiff's second grievance, regarding his removal from his work assignment for what he considered retaliatory purposes, at the second level of review.   Plaintiff contends that there was no documented misconduct on his part at this time that would support defendant Evans's findings.  Defendant Evans relied on two documents to support his finding on review; one document was prepared by defendant Sherer and cited plaintiff's relationship with staff and peers at "below average."  Plaintiff states that he did not receive a copy of this document until after September 7, 2001, and that this indicates that defendant Sherer tailored the document to support defendants' retaliatory actions.  Plaintiff claims that defendant Sherer's report rated his relationship with staff and peers at "below average" in retaliation for the grievance that he filed against defendant Chartier.  However, defendant Chartier's Work Supervisor's Report dated August 2001, rates plaintiff's attitude to supervisor and staff at below average.  The distinctions between these two named categories are negligible and it does not strain reason to conclude that defendant Sherer's report was based on defendant Chartier's report.

The second document that plaintiff alleges defendant Evans fraudulently relied on is a document prepared in order to arrange plaintiff's reassignment from defendant Chartier's work crew to the CDC in-camp crew due to his "uncooperative and disruptive attitude."  Plaintiff claims that this document is dated September 7, 2001, and that this indicates that it was created after his removal from defendant Chartier's crew in an attempt to give legitimate support to the defendants' retaliatory actions.

/////

Plaintiff does not adduce, however, any evidence that defendant Evans had any knowledge as to the now disputed veracity of these documents and that he chose to base his decision on them without regard to the truth. Plaintiff therefore fails to provide evidence that this review process was retaliatory and conducted to justify plaintiff's removal from defendant Chartier's work crew. Therefore, this court finds that defendant Evans is entitled to summary judgment.

B. Qualified Immunity

When undertaking a qualified immunity analysis, the threshold question is,

> [t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. . . . If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.

Jeffers v. Gomez, 267 F.3d 895, 909 (9th Cir. 2001) (citing Saucier v. Katz, 533 U.S. 194, 121 S.Ct. 2151, 2156 (1992)). If the facts viewed from this perspective establish a constitutional violation, the second inquiry is "whether the right was clearly established." Id. Finally, the third inquiry is whether, "[u]nder that law could a reasonable state official have believed his conduct was lawful?" Jeffers at 910, quoting Browning v. Vernon, 44 F.3d 818, 822 (9th Cir. 1995) (citing Act Up!/Portland v. Bagley, 988 F.2d 868, 871-72, (9th Cir. 1993)).

Plaintiff claims defendants retaliated against him for filing a grievance and he thereby suffered a constitutional violation. The right to petition the government for a redress of grievances is a right protected by the First Amendment. See, e.g. Franco v. Kelly, 854 F.2d 584, 585-86 (2d Cir. 1988) (right to seek redress from all branches of government); and Hines v. Gomez, 853 F.Supp. 329, 331 (N.D.Cal. 1994) (quoting Franco at 585-86). At the time of the incidents at bar, that right was clearly established. Thus, the final question in the qualified immunity analysis is whether reasonable corrections staff in defendants' positions could have

/////

believed that their actions toward plaintiff were lawful.  After careful review of this record, the court finds that question should be answered in the negative as to defendants Chartier and Sherer.

The same triable issues of material fact that preclude defendants Chartier and Sherer from succeeding on their motion for summary judgment also preclude them from the protective shield of qualified immunity.  The court views the facts in the light most favorable to plaintiff.  With respect to defendant Chartier, this court finds that no reasonable work supervisor would have believed that requesting plaintiff not be allowed to return to his work assignment for engaging in protected conduct would not violate plaintiff's constitutional rights.  And with respect to defendant Sherer, this court finds that no reasonable correctional sergeant would have believed that threatening plaintiff with disciplinary reprisals for plaintiff's protected conduct would not violate plaintiff's constitutional rights.

In accordance with the above, IT IS HEREBY RECOMMENDED that defendants' December 16, 2005, motion for summary judgment be granted for defendants Miles, Graves, Neggers, Wehunt, and Evans and denied for defendants Chartier and Sherer.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED:  August 25, 2006.

UNITED STATES MAGISTRATE JUDGE

14cann1769.msj